## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHELE KAHANA** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 20-4448** |
| | : |
| **ALLSTATE VEHICLE AND** | : |
| **PROPERTY INSURANCE COMPANY,** | : |
| *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                      **October 1, 2020**

Automobile insurance policies are contracts which we interpret under their unambiguous terms. We cannot extend an auto insurance policy on cars owned or used by the person purchasing the policy to conduct involving other cars not covered by the car insurance policy. Those other cars are not part of the contract. We also cannot extend auto insurance coverage beyond the agreed terms to include defending and indemnifying negligent supervision of children claims never mentioned in the insurance policy. We today address whether the auto insurer of the mother of a child who passed due to injuries from an alleged tortfeasor driving his own car must defend and indemnify the mother (with whom it has no contract) from the alleged tortfeasor's claims in state court challenging the mother's alleged negligence in allowing her child to cross dark streets after 2:00 AM on a December night last year. We find the mother fails to allege her auto insurer has a contractual duty to defend and indemnify her with respect to this negligent supervision claim. The mother's policy unambiguously limits its coverage to occurrences arising from the maintenance, ownership, or use of an owned or non-owned car. The underlying negligence claim does not involve, let alone even mention, a car, whether owned or non-owned. We grant the mother's auto insurer's motion to dismiss claims for coverage against it.

## I.     Alleged Facts[1]

Minor Alexandra Kahana crossed Bridge Street in Philadelphia at approximately 2:20 AM on December 8, 2019. While driving on Bridge Street, Kevin McMonagle collided with Ms. Kahana. Ms. Kahana passed away from injuries sustained from the collision.[2]

Ms. Kahana's mother Michele Kahana sued Mr. McMonagle in state court on January 27, 2020 alleging Mr. McMonagle's negligence and carelessness led to her daughter's fatal injuries.[3] Mr. McMonagle responded by claiming Ms. Kahana is wholly or jointly and severally liable for the fatal car accident.[4] Mr. McMonagle alleges Ms. Kahana is negligent *per se* because she knowingly allowed her minor daughter to remain in a public place after midnight in violation of a local curfew.[5] Mr. McMonagle further alleges Ms. Kahana permitted her daughter to walk alone, in the dark, dressed in dark clothing, without supervision or accompaniment, and without a light-emitting device.[6]

Ms. Kahana asked her homeowner insurer Allstate Vehicle and Property Insurance Company to enter a defense on Mr. McMonagle's claim and provide liability coverage in the event the judgment is entered against Ms. Kahana.[7] Allstate denies responsibility relating to the crossclaim.[8] Ms. Kahana also asked her auto insurer GEICO Casualty Company to defend and indemnify her as to Mr. McMonagle's claim.[9] GEICO denied the request.[10]

Ms. Kahana now seeks a declaratory judgment mandating Allstate and GEICO tender a defense and indemnify her from damages with respect to Mr. McMonagle's negligent supervision claim.[11]

## II.     Analysis

Ms. Kahana's auto insurer GEICO moves to dismiss the claim seeking coverage from it.[12] GEICO argues Ms. Kahana fails to state a claim for defense and indemnification under the

clear terms of her auto insurance policy.[13] Ms. Kahana responds GEICO's policy "clearly states that GEICO will pay damages related to the bodily injury of [her daughter]."[14] We agree with GEICO.

To determine whether an insurer has a duty to defend and indemnify[15], we (1) review the policy language "to determine in which instances [it] will provide coverage," resolving all ambiguities[16] in the language against the insurer and in favor of the insured; and (2) review the complaint in the underlying action "to determine whether the allegations set forth therein constitute the type of instances that will trigger coverage."[17] When "the language of the contract is clear and unambiguous, a court is required to give effect to that language,"[18] and we will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."[19]

Our Court of Appeals in *Henkel Corp. v. Hartford Accident & Indemnity Co.* affirmed the dismissal of a declaratory action against an insurer, finding no duty to defend where "the contractual provision at issue . . . could not be more clear."[20] The policy language unambiguously limited coverage to instances where the insured had been named as a defendant in a lawsuit; the underlying complaint named a subsidiary company operating under a different name than the insured.[21] In *State Farm Fire & Casualty Company v. Rodriguex-Cayro*, Judge Conner granted an insurer's motion for judgment on the pleadings in a declaratory judgment action because the underlying lawsuit involved alleged sexual abuse by the insured and the insured's policy only covered "accidents."[22] Judge Conner explained "[n]one of the allegations [in the underlying complaint] suggests that these acts were 'accidents' as defined by Pennsylvania law."[23]

3

To determine whether Ms. Kahana states a claim for coverage against GEICO, we first look to Ms. Kahana's policy:

> **LOSSES WE WILL PAY FOR YOU**
> Under Section I, we will pay damages which an **insured** becomes legally obligated to pay because of:
> 1. **Bodily injury**, sustained by a person, and
> 2. Damage to or destruction of property, arising out of the ownership, maintenance or use of the **owned auto** or **non-owned auto**. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.[24]

The policy further defines "owned auto" and "non-owned auto":

> **Owned auto** means:
> (a) a vehicle described in the policy for which a premium is shown for these coverages;
> (b) a trailer owned by you;
> (c) a private passenger auto, farm auto, or utility auto, which you acquire ownership of during the policy period or for which you enter into a lease for a term of six months or more during the policy period, if
>> (i) it replaces an owned auto as defined in (a) above; or
>> (ii) we insure all private passenger autos, farm autos, and utility autos owned or leased by you on the date of the acquisition;
> and you ask us to add it to the policy no more than 30 days later;
> (d) A temporary substitute auto.[25]
>
> **Non-owned auto** means a private passenger auto, farm auto, utility auto, or trailer not owned by or furnished for the regular use of either you or your relatives, other than a temporary substitute auto. You or your relative must be using the non-owned auto or trailer within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use . . . [26]

Ms. Kahana argues the auto policy language encompasses instances of bodily injury to the insured, regardless of any connection to an owned or non-owned auto.[27] She argues the condition of "arising out of ownership, maintenance, or use of the owned or non-owned auto" applies only to instances of "damage to or destruction of property."[28] We disagree. The unambiguous structure and language of the Policy language instructs the condition applies to both (1) bodily injury and (2) property damage. Under Ms. Kahana's interpretation, an auto insurance policy would be

4

triggered any time the insured suffers bodily injury in any context. This runs contrary to common sense.[29] This interpretation has no relationship to the contract.

Looking to the underlying claim, Mr. McMonagle avers Ms. Kahana acted negligently by knowingly allowing her minor daughter to remain in a public place after midnight in violation of a local curfew.[30] Mr. McMonagle further alleges Ms. Kahana acted negligently in permitting her daughter to walk alone, in the dark, dressed in dark clothing, without supervision or accompaniment, and without any light-emitting device.[31] Mr. McMonagle's claim does not allege Ms. Kahana owned, maintained, or used a car involved in the fatal collision. The Policy covers damage from a non-owned car but clearly provides: "You or your relative must be using the non-owned auto or trailer within the scope of permission given by its owner."   Mr. McMonagle's car hit Alexandra. Not Ms. Kahana's car. Ms. Kahana does not allege, nor could she, permission to drive Mr. McMonagle's car. As GEICO aptly argues, Mr. McMonagle does not mention a car of any kind, whether owned or non-owned.   Like *Henkel* and *State Farm*, Mr. McMonagle's underlying complaint fails to trigger coverage under the clear and unambiguous language of Ms. Kahana's auto policy. We must therefore dismiss GEICO.

## III.   Conclusion

We dismiss GEICO in Ms. Kahana's declaratory judgment action and will proceed in determining whether her home insurer must tender a defense and indemnify her for damages arising from Mr. McMonagle's claim of negligent supervision of her daughter.

---

[1] We recite these facts from Ms. Kahana's Complaint for Declaratory Judgment (ECF Doc. No 1-5) and attached exhibits. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").   For purposes of the Motion to dismiss, we take Ms. Kahana's allegations as true. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[2] ECF Doc. No. 1-5 at 6.

[3] *Id.*

[4] *Id.* at 6-7.

[5] *Id.* at 48.

[6] *Id.* at 48-49.

[7] *Id.* at 7. Allstate answered the Complaint and we are now proceeding into discovery under our September 25, 2020 Order. (ECF Doc. Nos. 11, 18).

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. (12)(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Bos. MBS ARMT 2005-8*, No. 18-1718, 2020 WL 1514764, at *2 n.5 (3d Cir. Mar. 30, 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)).

"A claim has facial plausibility when the plaintiff pleads factual content . . . allow[ing] the court to draw the reasonable inference . . . the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, No. 19-1470, 2020 WL 1492987, at *2 (3d Cir. Mar. 25, 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility . . . a defendant has acted unlawfully." *Riboldi v. Warren Cty. Dep't of Hum. Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at *1 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)). Our Court of Appeals instructs us to use a three-step analysis for 12(b)(6) claims. First, we "must take note of the elements the plaintiff must plead to state a claim"; next, we should identify allegations not entitled to the assumption of the truth because they are no more than conclusions; last, "when there are well-pleaded factual allegations," we "should assume  their veracity and . . .

determine whether they plausibly give rise to an entitlement to relief." *In re Synchronoss Techs., Inc. Sec. Litig.*, No. 17-2978, 2020 WL 2786936, at \*4 (D.N.J. May 29, 2020) (quoting *Connelly v. Lane Constr. Corp*, 809 F.3d 780, 787 (3d Cir. 2016)).

[13] ECF Doc. No. 15-1.

[14] ECF Doc. No. 21-1 at 5.

[15] "It is well-established that an insurer's duty to defend is more encompassing than the duty to indemnify. Therefore, if [insurer] had no duty to defend [insured] on the merits of the underlying action, it could not later be required to indemnify . . . ." *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997); *see also Erie Insurance Co. v. Claypoole,* 449 Pa. Super. 142 (1996); *Antrim Mining v. Pa. Ins. Guar. Ass'n*, 436 Pa. Super. 522, 527-28 (1994).

[16] A contractual term is ambiguous if it is "subject to more than one reasonable interpretation when applied to a particular set of facts." *Wilcha v. Nationwide Mut. Fire Ins. Co.*, 887 A.2d 1254, 1259 (Pa Super 2005).

[17] *W. Heritage Ins. Co. v. Darrah*, No. 1:11-CV-1539, 2012 U.S. Dist. LEXIS 71768, at \*10 (M.D. Pa. May 23, 2012).

[18] *Wilcha v. Nationwide Mut. Fire Ins. Co.*, 887 A.2d 1254, 1259 (Pa Super 2005).

[19] *Id.*

[20] 271 F. App'x 161, 164 (3d Cir. 2008).

[21] *Id.*

[22] No. 17-1352, 2018 WL 4742330, at \*3 (M.D. Pa. Oct. 2, 2018).

[23] *Id.*

[24] ECF Doc. No. 21-4 at 8; ECF Doc. No. 15-1 at 6. We are concerned Ms. Kahana's counsel possibly misrepresented the Policy text in her response brief. ECF Doc. No. 21-1 at 4. Counsel omitted the comma following "destruction of property" and moved the "arising out of the ownership, maintenance, or use of the owned auto or non-owned auto" condition to make it appear as though it only applies to instances of property damage, not bodily injury. *Id.* We reviewed the true and original GEICO Policy, attached to her response and in GEICO's Motion. Our Order today granting GEICO's Motion to dismiss also requires Ms. Kahana's counsel show cause at our initial pretrial conference why we should not enter monetary sanctions including possibly reimbursing GEICO's reasonable fees and costs. We may consider the insurance policies attached to the parties' briefing because they are incorporated into the complaint by reference. *Wallace v. Green*, No. 08-3239, 2008 WL 11516018, at \*1 n.1 (E.D. Pa. Nov. 21, 2008).

[25] ECF Doc. No. 15-1 at 6-7; ECF Doc. No. 10-3 at 74.

[26] ECF Doc. No. 21-4 at 7.

[27] ECF Doc. No. 21-1 at 5.

[28] *Id.*

[29] *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief…requires the reviewing court to draw on its judicial experience and common sense."); *see also Continental Cas. Co. v. Certain Underwriters at Lloyd's*, No. 92-4094, 1993 WL 299232, at *5 (N.D.Cal. July 21, 1993) (finding that an interpretation of a policy similar to plaintiffs would eviscerate the arbitration clause and run contrary to common sense).

[30] ECF Doc. No. 1-5 at 38.

[31] *Id.*